UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

   - against -

ANN (SANDY) BATCHELOR-ROBJOHNS,
a/k/a ANNE O-NEILL BATCHELOR, et al.,

        Defendants.
-------------------------------------------------------X

**O R D E R**

05 MISC 24 (JG)

By Notice of Motion filed February 4, 2005, plaintiff United States of America (the "United States" or the "government") seeks to compel the firm of Sidley Austin Brown & Wood LLP ("SABW") to produce documents sought in an action pending in the Southern District of Florida. The defendant in that action, International Air Leases, Inc., has sought to protect these subpoenaed documents from disclosure on the grounds that the documents reflect the legal opinions of SABW rendered to IAL, SABW's client, and, as a consequence, the documents are protected from disclosure by the attorney-client privilege and the work-product doctrine.

For the reasons set forth below, the Court grants the government's motion to compel.

## FACTUAL BACKGROUND

The United States initially commenced a lawsuit in the Southern District of Florida to obtain a judgment against the estate of George E. Batchelor and for unpaid Federal income tax liabilities of International Air Leases Inc. ("IAL").[1] (Govt's Mot. at 3). IAL's tax liabilities

---

[1] According to the government, Batchelor's estate is subject to IAL's tax liabilities as a result of a transfer of IAL assets to the Batchelor estate. (Government's Motion ("Govt's Mot.") at 3).

allegedly arise in part from a Custom Adjustable Rate Debt Structure ("CARDS") transaction, which the Internal Revenue Service ("IRS") has determined to be "an abusive tax shelter." (Id.)

According to the government, in 1999, the law firm of Brown & Wood LLP (now SABW) provided several legal opinion letters to Chenery Associates Inc., the promoter of the CARDS tax shelter, including an opinion that the CARDS transaction would provide IAL with its desired tax loss. (Id. at 4). IAL now contends that opinions from Brown & Wood legitimize the shelter which the government maintains is a sham transaction. (Id.)

The government issued a subpoena to SABW on December 22, 2004, seeking all documents relating to IAL and the CARDS tax shelter in order to determine if SABW was in fact IAL's attorney, if IAL reasonably relied on SABW's advice, and if IAL had a legitimate business purpose.

IAL asserts the attorney-client privilege and work-product doctrine in seeking to protect the documents from disclosure.[2]

## DISCUSSION

A. Attorney-Client Privilege

It is well-established that the party claiming the protection of a privilege has the burden to establish that the privilege is applicable under the circumstances. See In re Grand Jury Subpoenas Dated Mar. 19, 2002 and Aug. 2, 2002 v. United States, 318 F.3d 379, 383 (2d Cir.

---

[2]Although IAL has not submitted any papers in connection with the government's motion in this Court, the Court has reviewed the arguments advanced by IAL in seeking a protective order before the Bankruptcy Court in the Southern District of Florida. That motion was apparently denied because IAL failed to meet and confer with its adversary prior to filing the motion.

2003); see also United States v. Adlman, 68 F.3d 1495, 1500 (2d Cir. 1995) (citing von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir.), cert. denied, 481 U.S. 1015 (1987)); Gorman v. Polar Electro, Inc., 137 F. Supp. 2d 223, 227-28 (E.D.N.Y. 2001). The attorney-client privilege attaches:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance [sic] permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

United States v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997) (quoting In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984); accord United States v. Bein, 728 F.2d 107, 112 (2d Cir.), cert. denied, 469 U.S. 837 (1984) (quoting United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961)); see also United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir.), cert. denied, 519 U.S. 927 (1996). Thus, the privilege is triggered when a client, including a corporation, seeks legal advice from its counsel. See In re Grand Jury Subpoena Duces Tecum, 731 F.2d at 1037. Moreover, in Upjohn Co. v. United States, 449 U.S. 383, 390 (1981), the Supreme Court noted that "[the] privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."

In order to invoke the attorney-client privilege, the person claiming the privilege must establish:

> 1) the asserted holder of the privilege is or sought to become a client;

2) the person to whom the communication was made:
>  (a) is [a] member of a bar of a court, or his subordinate and
>  (b) in connection with this communication is acting as a lawyer;

3) the communication relates to a fact of which the attorney was informed:
>  (a) by his client
>  (b) without the presence of strangers;
>  (c) for the purpose of securing primary either;
>  > (i) an opinion on law; or,
>  > (ii) legal services; or,
>  > (iii) assistance in some legal proceeding, and not
>  
>  (d) for the purpose of committing a crime or tort; and,

4) the privilege has been:
>  (a) claimed; and,
>  (b) not waived by the client.

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (citations omitted); see also United States v. Kelly, 569 F.2d 928, 938 (5th Cir.), cert. denied 439 U.S. 829 (1978); S.E.C. v. Beacon Hill Asset Mgmt. LLC, No. 02 CV 8855, 2004 WL 1746790, at *3 (S.D.N.Y. Aug. 3, 2004).

Of course, the privilege may be waived when the "'holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.'" In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 468 (S.D.N.Y. 1996) (citations omitted), cert. denied, 502 U.S. 813 (1991). Even if the privilege holder does not attempt to use the privileged communication itself, courts have found that a waiver of the privilege occurs when the holder makes factual assertions which can only be verified by examining the privileged communications themselves. See id. (citing United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.), cert. denied, 502 U.S. 813 (1991); Leucadia, Inc. v. Reliance Ins. Co., 101 F.R.D. 674, 679-80

4

(S.D.N.Y. 1983); Hearn v. Rhay, 68 F.R.D. 574, 580-81 (E.D. Wash. 1975) (noting that "[a]ll of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party") (cited with approval in United States v. Bilzerian, 926 F.2d at 1292)).

As the Second Circuit has recently noted, an "implied waiver may be found where the privilege holder 'asserts a claim that in fairness requires examination of protected communications.'" In re Grand Jury Proceedings v. John Doe, 219 F.3d 175, 182 (2d Cir. 2000) (quoting United States v. Bilzerian, 926 F.2d at 1292); see also In re Kidder Peabody Sec. Litig., 168 F.R.D. at 470. The underlying premise is that a party cannot use the privilege both as "a shield and a sword," partially disclosing a privileged conversation with counsel or claiming reliance on that advice as a defense to the action, while at the same time attempting to "shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings v. John Doe, 219 F.3d at 182 (citing Hearn v. Rhay, 68 F.R.D. at 581-83); see also In re Von Bulow, 828 F.2d 94, 103 (2d Cir. 1987); United States v. Locascio, 357 F. Supp. 2d 536, 550 (E.D.N.Y. 2004) (citing United States v. Bilzerian, 926 F.2d at 1292). The court further noted that "'[t]he quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received.'" In re Grand Jury Proceedings v. John Doe, 219 F.3d at 182-183 (citing In re Kidder Peabody Sec. Litig., 168 F.R.D. at 470); see also Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 615 (2d Cir. 1964).

5

B. <u>Work-Product Doctrine</u>

The work-product doctrine protects the mental impressions of the attorney. See <u>Upjohn Co. v. United States</u>, 449 U.S. at 399 (citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947)). It is clear that the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." <u>United States v. Adlman</u>, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting <u>Hickman v. Taylor</u>, 329 U.S. at 510-11). In determining whether a document is protected by the work-product doctrine, some courts have limited the protection to items "'prepared principally or exclusively to assist in anticipated or ongoing litigation.'" <u>In re Kidder Peabody Sec. Litig.</u>, 168 F.R.D. at 462 (quoting <u>United States v. Constr. Prods. Research, Inc.</u>, 73 F.3d at 473); see, e.g., <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 471 (S.D.N.Y. 1993); <u>Martin v. Valley Nat'l Bank of Ariz.</u>, 140 F.R.D. 291, 304 (S.D.N.Y. 1991). However, the Second Circuit in its recent decision in <u>United States v. Adlman</u> held that to require the "documents [to] be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text and policies of the Rule . . . . Preparing a document 'in anticipation of litigation' is sufficient." 134 F.3d at 1198. The court cited with approval the formulation of the privilege set forth in Wright and Miller, and applied by the Third, Fourth, Seventh, Eighth, and D.C. Circuits. <u>Id.</u> at 1202. That formulation deems documents within the scope of the privilege, if "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained <u>because</u> of the prospect of litigation.'" <u>Id.</u> (emphasis in original) (quoting Charles Alan Wright, et al., 8 Federal Practice & Procedure § 2024, at 343 (1994)). The court in <u>Adlman</u> noted, however, that

6

under this formulation, documents prepared in the ordinary course of business or that would have been created in the absence of the litigation are not protected. Id. Once the work-product protection attaches, documents reflecting the mental processes of attorneys need only be disclosed upon a showing "of necessity and unavailability by other means." Upjohn Co. v. United States, 449 U.S. at 402. Moreover, it is clear that the party seeking the protection has the burden to prove the basis for its claim of the work-product rule and "must do so by competent evidence." In re Kidder Peabody Sec. Litig., 168 F.R.D. at 467 (citations omitted).

C. Analysis

IAL asserts that there is no question that it retained SABW to provide legal advice and legal opinions to IAL. In that regard, IAL produced during discovery the final legal opinion provided to IAL from SABW as well as other nonprivileged documents and information. IAL objects to the production of SABW's notes, drafts, correspondence or e-mails relating to its representation of IAL and to any testimony by the lawyers regarding their due diligence or analysis of the CARDS Transaction.

The government argues that since these opinions relate purely to a financial transaction and do not constitute legal advice as such, they are not protected under the attorney-client privilege. Moreover, to the extent that SABW disclosed its opinion to Chenery, a third party, or provided the final opinion to the IRS, the privilege has been waived and there must be full disclosure. See Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight Inc., 36 F. Supp. 2d 127, 129 (E.D.N.Y. 1998) (citing cases). The government also contends that because IAL and SABW failed to submit a privilege log of the confidential information, the privilege has

been waived. See Kai USA Ltd. v. Camillus Cutlery, 224 F.R.D. 326, 328 (E.D.N.Y. 2004). Finally, the government argues that IAL cannot use the privilege to justify its tax liability while at the same time claim the privilege to protect the basis on which the assertion is made. See United States v. Bilzerian, 926 F.2d at 1292 (holding, that the privilege cannot be used as both a sword and a shield). Where a party relies on the advice of counsel as a defense to the parties' actions, he "'waives the attorney-client privilege as to communications and documents relating to the advice.'" Wedding Channel.com, Inc. v. The Knot, Inc., No. 03 CV 7369, 2004 WL 2984305, at * (S.D.N.Y. Dec. 23, 2004) (quoting Multiform Dessicants v. Stanhope Prods. Co., 930 F. Supp. 45, 47 (S.D.N.Y. 1996)).

While the court is not persuaded that advice given in connection with the legality of a financial venture is not protected by the attorney-client privilege, the Court finds here that the privilege has been waived, not only as a result of disclosure to a third party but also because IAL is attempting to rely on the advice as a shield to tax liability but does not want to fully disclose the basis on which SABW rendered its opinion. For these reasons, the Court finds the attorney-client privilege has been waived.

As to SABW's assertions of work-product protection, the Court agrees with the government that documents subject to the work-product doctrine must be prepared "in anticipation of litigation." United States v. Adlman,134 F.3d at 1198. Here, there has been no showing by IAL that the opinion letter and the communications leading up to its issuance were prepared because of litigation.[3]

---

[3]In this regard, the Court notes that in a recent decision issued out of the Eastern District of Michigan dealing with a related subpoena to Miller Canfield Paddock and Stone PLC, the court also found that firm's opinion letters and related documentation were not protected by

Accordingly, SABW is Ordered to comply with the government's subpoena and produce the requested documents on or before June 16, 2005.

**SO ORDERED.**

Dated: Brooklyn, New York
June 2, 2005

                                        s/Cheryl Pollak
                                        Cheryl L. Pollak
                                        United States Magistrate Judge

---

either the attorney-client privilege or the work-product doctrine. See United States v. Batchelor-Robjohns, No. 05-X-70441 (E.D. Mich. May 4, 2005). However, in that case, it appears that the defendant provided copies of the documents at issue to the court for review. Here, the documents have not been provided. Accordingly, because it is the burden of the party seeking to protect the documents from disclosure to prove that they are subject to the privilege, and the defendant has not submitted the documents for review or provided a detailed description of the contents of the documents, this Court finds that the defendant has failed to sustain its burden.